This was an action of debt upon a bond, of which the following is a copy: "With interest from date, I promise to pay to Alexander D. McRae the sum of $360, being in consideration of money which he paid for Hugh D. McRae and his heirs, which sum I am to pay when it can be raised out of estate left to them by the will of Daniel McRae, their father. In witness whereof, etc., dated 4 February, 1846, and executed by Daniel D. McRae."
The defense relied on was that the bond showed upon its face that it was payable upon a condition precedent, which had not been performed.
The plaintiff produced in evidence the will of Daniel McRae, deceased, in which was the following clause: "I give and bequeath to my son Alexander McRae, for the sole and (367) separate use and benefit of my son Hugh McRae, in trust, the following slaves, viz., Ehloe and her child Hannah, Sam, Abram and Dinah, together with their future increase; also I give and bequeath the one-half of the tracts of land whereon I now live, containing 750 acres, for the sole and separate use of my son Hugh McRae during his natural life, and at his death to his heirs forever." He then proved that Hugh McRae, mentioned in the said clause, had died, leaving three children, to whom the defendant had been regularly appointed guardian; and that two of the slaves mentioned in the clause aforesaid were worth about $600. The writ was issued on 15 January, 1849, nearly three years after the date of the execution of the bond; and the plaintiff contended that the defendant had had *Page 268 
ample time to have raised the amount mentioned in the bond, by a sale of the property of his wards; that it was his duty by law so to have done, and that his neglect or delay in so doing ought not to prevent the plaintiff from recovering.
The defendant contended that the true construction of the bond was that the money was to be raised out of the rents and profits of the property of his wards; that he had no right to sell it, or any part of it, to pay the bond; and that there was no evidence that any rents or profits had been received by him, nor even that the property had been delivered over to him, except what might be inferred from his appointment as guardian; and that, consequently, the plaintiff could not deliver. And of this opinion was the court, in submission to which the plaintiff was nonsuited, and appealed to the Supreme Court.
(368) This was debt on a bond for $360. The defense was, that payment was not to be made until the defendant, as guardian of the children of Hugh McRae, could raise the money out of the rents and profits of the property of his wards.
His Honor was of opinion that such was the proper construction of the bond. In this, we think, there is error. It is true that for the maintenance and education of a ward the guardian has no right to expend more than the income. But for the payment of debts for which his ward is liable, a guardian has it in his power, by proper proceedings, to sell the real as well as the personal estate.
The true construction of the bond is that the money was to be paid as soon as it could be raised by a sale of the property of the wards of the defendant. He was bound to procure a sale for that purpose within a reasonable time. Certainly, it could have been done within some time short of three years.
PER CURIAM. There must be a venire de novo.